UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMANDA MAGEE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | Case No. 17-cv-01922 (APM) |
| NANCY A. BERRYHILL, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Amanda Magee challenges an Administrative Law Judge's ("ALJ") decision denying her Supplemental Security Income Benefits. She raises two errors. First, Plaintiff argues that the ALJ improperly relied on contradictory evidence from a vocational expert. Second, she maintains that the ALJ violated the "treating physician rule," which requires judges to give significant weight to a treating physician's opinion. The court agrees with Plaintiff on her first claim, but not her second. The ALJ relied on vocational expert testimony that appears to be contradictory, and so the court remands to the agency on this limited issue. The court does not agree, however, with Plaintiff's challenge to the ALJ's application of the treating physician rule. The parties' motions therefore are granted in part and denied in part.

### II. BACKGROUND

Plaintiff is a 35-year-old living in Washington, D.C. On April 22, 2013, she filed an application for Supplemental Security Income Benefits, alleging disability based on a diagnosis of fibromyalgia. *See* Administrative Record, ECF Nos. 4-2 to 4-17 [hereinafter R.], at 15, 23, 849. The Social Security Administration initially denied Plaintiff's application on July 12, 2013, and

did so again on reconsideration on September 23, 2013. *Id.* at 23. On February 21, 2014, Plaintiff appeared at a hearing in front of an Administrative Law Judge ("ALJ"), *see id.* at 23, who found Plaintiff not disabled, *see id.* at 32.

Plaintiff then sought review in this District Court, where she found success. A magistrate judge determined that the ALJ had failed to sufficiently develop the record with a mental health consultative examination. *Id.* at 456–60. Her success was short-lived, however. On remand, even taking account of Plaintiff's mental health limitations, the ALJ denied Plaintiff's claim for benefits, finding that she was not disabled and that she could perform light, unskilled work. *Id.* at 396. Relying on a vocational expert's testimony, the ALJ concluded that there were jobs in the national economy that Plaintiff could perform. *Id.* at 395–96.

Plaintiff filed this case on September 20, 2017. *See* Compl., ECF No. 1. On February 13, 2018, she filed a Motion for Judgment of Reversal. *See* Pl.'s Mot. for Judg. of Reversal, ECF No. 6 [hereinafter Pl.'s Mot.]; Pl.'s Mem. in Support of Pl.'s Mot., ECF 6-1 [hereinafter Pl.'s Mem.]. Defendant responded with a Motion for Judgment of Affirmance on April 30, 2018. *See* Def.'s Mot. for Judg. of Aff. and Opp'n to Pl.'s Mot. for Judg. of Reversal, ECF No. 8 [hereinafter Def.'s Mot.]. Those motions are ripe for consideration.

### III.  LEGAL STANDARD

Under the Social Security Act, 42 U.S.C. § 405(g), individuals denied benefits may seek review in a federal district court. "The court must uphold the Secretary's determination if it is supported by substantial evidence and is not tainted by an error of law." *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1986). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotations omitted). To determine

whether the Commissioner, acting through an ALJ, reached a decision supported by substantial evidence, the court must give "careful scrutiny of the entire record." *Brown v. Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986).

## IV. DISCUSSION

Plaintiff challenges two aspects of the ALJ's decision. *First*, she asserts that the ALJ improperly relied on contradictory testimony from the vocational expert. *See* Pl.'s Mem. at 7–11, 16–17. *Second*, she contends that the ALJ violated the treating physician rule by failing to give proper weight to evidence from her treating physician, Dr. Sharon Dowell, a rheumatologist. *Id.* at 11–16.[1] The court takes these issues in turn.

### A. Vocational Expert's Contradiction

The Commissioner has established a five-step process to determine disability. *See* 20 C.F.R. § 404.1520. Plaintiff's contention concerning the ALJ's reliance on the vocational expert's testimony pertains to step five, which places the burden on the Commissioner "to demonstrate that the claimant is able to perform 'other work' based on a consideration of her 'residual functional capacity' (RFC), age, education and past work experience." *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

In this case, the ALJ determined that the Commissioner had carried her burden at step five. The ALJ found that Plaintiff had an RFC "to perform light, unskilled work as defined in 20 CFR 416.967(a) except sit/stand alternatively provided that she is not off task more than 10 percent of the workday; use of a hand-held mechanically assistive device, namely a cane, used for walking rarely; understand, remember, and carry out instructions that are for simple, routine tasks

---

[1] In her initial motion, Plaintiff appeared to assert that the ALJ did not conduct a function-by-function analysis, *see* Pl.'s Mem. at 5–6, but in her reply, Plaintiff clarifies that she "did not argue that the Administrative Law Judge had failed to set forth a function-by-function assessment," Pl.'s Opp'n to Def.'s Mot. for Judg. of Affirmance, ECF No. 11, at 4. For this reason, the court does not address the issue.

3

occasionally; make simple decisions occasionally; and no satisfaction of production pace." R. at 390. Based on this RFC, the ALJ posed the following hypothetical to the vocational expert:

> Assume that a hypothetical that has the same age, education, and work experience as the claimant and who has the ability to do sedentary work unskilled. Sit/stand alternatively provided that the hypothetical claimant is not off task more than ten percent of the work period . . . Ability to understand, remember, and carry out instructions which are for simple and routine tasks *occasionally*; ability to make simple decisions *occasionally*; ability to perform work that does not require satisfaction of production pace. Are there any jobs that such a hypothetical person can perform on a sustained basis? And which jobs exist in significant numbers in the national economy? At the prior hearing, you were asked that question. And the answers you have were machine tender, grader, and bench worker. Do your answers still stand?

R. at 426–27 (emphases added). The vocational expert asked the ALJ to clarify whether he meant to predicate his hypothetical on "light, unskilled work," instead of sedentary work. *Id*. at 427. The ALJ acknowledged his error, and asked whether jobs exist for "light unskilled, all other factors remain the same." *Id.* The vocational expert testified that such jobs did exist in the national economy and identified them. *Id*. at 427–28. Later, however, in response to questioning from Plaintiff's attorney, the vocational expert stated that, "it is my opinion that if the individual is off task 20 percent of the workday or greater when compared to other employees performing the same or similar job duties, at that point they are not employable." R. at 430.

The court finds the expert's testimony to be seemingly self-contradictory. The RFC finding provided that Plaintiff would be able to "understand, remember, and carry out instructions that are for simple, routine tasks *occasionally*" and "make simple decisions *occasionally*." Occasionally is a term of art in the disability context. It means "occurring from very little up to one-third of the time." *Titles II & VXI: Determining Capability to do Other Work- the Medical-Vocational Rules of Appendix 2*, Social Security Ruling 83-10, at *5 (S.S.A. 1983). Given this accepted meaning,

4

the ALJ's hypothetical asked whether employment existed for a claimant who had the "ability to understand, remember, and carry out instructions which are for simple and routine tasks [very little to up to one-third of the time]" and the "ability to make simple decisions [very little to up to one-third of the time]." R. at 426–27. The flip-side of that hypothetical assumes that a claimant would *not* have had the ability to carry out instructions for simple and routine tasks and make simple decisions two-thirds *or more* of the day. Notwithstanding such limitations, the vocational expert affirmed that employment did exist in the national economy for a hypothetical claimant with the same RFC as Plaintiff. *Id.* at 427. Yet, the vocational expert elsewhere testified that a person who is off task 20 percent or more of the workday could *not* obtain employment. R. at 430. These two pieces of testimony are hard to square with each other. A person who only "occasionally" has the ability to understand, remember, and carry out simple instructions, and can only "occasionally" make simple decisions, would be off task at least *three times more* than the 20-percent threshold the expert testified would render a person unemployable. In reaching her final decision, the ALJ did not recognize or reconcile this seeming contradiction in the vocational expert's testimony. Thus, the court cannot affirm the ALJ's decision.

A court in the District of Maryland reached the same conclusion in strikingly similar circumstances. In *Benita Washington v. Commissioner*, the ALJ described a hypothetical claimant with an RFC to "understand, remember, and carry out instructions which are for simple and routine tasks *frequently*." Civil No. SAG-17-908, at *3 (D. Md. July 13, 2018) (emphasis added); *see also* Pl.'s Opp'n, ECF No. 13; Copy of *Benita Washington v. Commissioner*, ECF No. 13-1. In the disabilities context "frequently" means "occurring from one-third to two-thirds of the time." Social Security Ruling 83-10, at *6. The flip-side of the ALJ's hypothetical, therefore, assumed that the claimant would not have been able to understand, remember, and carry out instructions for

at least one-third of the time. Nonetheless, the vocational expert testified that work was available, yet later stated that a claimant off task 20% of the time would not be employable. Civil No. SAG-17-908, at *3. Based on these seemingly contradictory statements, the judge in *Benita Washington* remanded for clarification.

Defendant's sole response to the seemingly inconsistent expert testimony is that it is Plaintiff's burden to prove "at step four of the analysis 'evidence that her impairments would reduce her productivity by 20%.'" Def.'s Mot. at 16 (quoting *Thompson v. Colvin*, Civil No. TMD 13-3450, 2015 WL 1393562, at *7 (D. Md. Mar. 24, 2015)). That is a correct statement of the law as far as it goes. But the issue here is a different one: Can a claimant who only "occasionally" can carry out simple instructions and make simple decisions also remain on task 80% or more of the time? The ALJ's decision does not clearly answer that question.

The court does not mean to suggest that the RFC findings and the ultimate denial of disability benefits are fatally inconsistent. For instance, a portion of the RFC provides that Plaintiff could perform light, unskilled work "except sit/stand alternatively provided that she is not off task more than 10 percent of the workday." R. at 390. It may be that a person could be physically off task up to 10% of the workday *and* be limited in decision-making and following instructions, yet still be employable in the national economy. But it is not clear to the court how the 10 percent off-task threshold relates, if at all, to Plaintiff's ability to "occasionally" follow instructions and make decisions, and how those factors relate to the expert's opinion that a person who is off task more than 20% of the workday is unemployable. The ALJ will have to explain these apparent tensions on remand.

B.  **Treating Physician Rule**

The court turns now to Plaintiff's argument that the ALJ did not comply with the "treating physician rule," which provides that a treating physician's report is "binding on the fact-finder unless contradicted by substantial evidence." *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993) (internal quotation marks and citation omitted). The rule recognizes that treating physicians have greater familiarity with claimants and therefore their opinions are entitled to substantial weight. *See Butler*, 353 F.3d at 1003. An ALJ, nonetheless, can reject a treating physician's opinion, but she must "explain [her] reasons for doing so" and justify it with substantial evidence. *Id.*; *see also Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011).

In this case, Plaintiff's treating physician, Dr. Dowell, opined that Plaintiff could walk less than one block without severe pain, sit thirty minutes at most, stand fifteen minutes at most, require a ten-minute break every thirty minutes, and rarely carry more than ten pounds. *See* R. at 943–44. The ALJ addressed these opinions and cited substantial evidence for rejecting them. The ALJ wrote:

> The undersigned gives little weight to the opinions of the claimant's rheumatologist. In various forms dated February 2014 to September 2016, she opined that the claimant could not perform even sedentary work. She included substantial sit/stand option, postural, off task, and absenteeism limitations. She first wrote that the claimant's psychological symptoms would interfere with her ability to work 25 percent or more of the day but later assessed the claimant with moderate limitation in all areas of basic mental functioning. Throughout treatment notes, she also described the claimant as unable to work. Nevertheless, the longitudinal record does not contain any mobility or power deficits to evidence such extreme exertional, disabling limitations. Though recommended from time to time, there is no evidence of ongoing formal mental health treatment. In fact, she has been cooperative with good eye contact upon examination. Her memory, concentration, and alertness have remained intact for the above cognitive abilities. Therefore, the undersigned gives little weight to these opinions because despite a

>       treating relationship, they are inconsistent with the overall record
>       (Ex. 9F, 19F, 23F, 28F).

R. at 394. This statement explicitly acknowledges Dr. Dowell's findings—"includ[ing] substantial sit/stand option, postural, off task, and absenteeism limitations"—and explains why the ALJ declined to follow them—"the longitudinal record does not contain any mobility or power deficits to evidence such extreme exertional, disabling limitations."

The ALJ spent a substantial portion of her opinion explaining why the longitudinal record did not support Dr. Dowell's conclusions. The ALJ looked to an April 2013 rheumatology consultation, where Plaintiff "displayed intact motility, stability, or neurological markers," and her "initial blood work-up was negative." R. at 391 (citing R. at 738–41). The ALJ also relied on a June 2013 orthopedic appointment, where Plaintiff had "full range of motion without pain at the extremes" and "there was no motor weakness." *Id*. (citing R. at 243–44). In that appointment, Plaintiff also "acknowledged relief with exercise." *Id*. (citing R. at 244). The ALJ cited a February 2014 appointment with Dr. Dowell, where "[a] physical examination revealed no acute distress . . . [and] her gait and station were normal." *Id*. (citing R. at 1151–54). The record from that date reflects that, "while [Plaintiff] had diffuse tenderness on examination, she managed normal range of motion, stability, and motor signs." *Id.* at 392 (citing R. at 1153).

There is more. The ALJ reviewed other medical examinations of Plaintiff, all of which contradicted Dr. Dowell's limitation findings. In September 2014, Plaintiff was released back to primary care because "she was controlled on Motrin," *id.* (citing R. at 1027); in March 2015, Plaintiff complained of generalized pain, but "a physical examination was mostly unremarkable," *id.* (citing R. at 1155–58); in July 2015, "[Plaintiff] requested an ibuprofen refill and had no complaints [and a] physical examination was entirely negative," *id.* (citing R. at 1004–05); and in September 2016, Plaintiff reported diffuse pain throughout her body, but "also acknowledged

symptomatic improvement with ibuprofren," *id.* (citing R. at 1159). The ALJ also noted the consultative examinations, which found that Plaintiff managed a normal gait, was able to walk on her heels, and did not need assistive devices. *Id.* at 393 (citing R. at 51–63, 65–76). And, notably, the ALJ also referred to Plaintiff's ability to perform daily activities, such as taking personal care, preparing simple meals, and shopping in stores independently. *Id.* at 393. Plaintiff also conceded that she was capable of going out alone and caring for her son. *Id.* These findings provide substantial evidence for the ALJ to have rejected Dr. Dowell's opinion about Plaintiff's exertional limitations. *See Page v. Berryhill*, 688 Fed. App'x. 7, 9 (D.C. Cir. 2017) ("Because [the primary physician's] opinion that [Plaintiff] is unable to work was contradicted by substantial evidence in the record . . . and because the ALJ explained why he chose not to credit [the primary physician's] opinion, the ALJ adhered to the relevant legal standards.").

The court also finds no error in the ALJ's rejection of Dr. Dowell's opinion about Plaintiff's mental health. Dr. Dowell opined that Plaintiff struggled with short-term memory, simple directions, social interactions, and confusion. R. at 944. Yet, as the ALJ pointed out, in other parts of the record Dr. Dowell had noted that Plaintiff had moderate—as opposed to marked or extreme—limitations in maintaining concentration and social functioning. *Id*. at 394; *see id.* at 1074, 1112, 1147. The ALJ also observed that Plaintiff never received ongoing mental health treatment, although providers recommended it at times. *Id*. at 394. These observations by the ALJ provided substantial evidence to reject Dr. Dowell's mental health conclusions.

In sum, the court rejects Plaintiff's contention that the ALJ violated the treating physician rule.

## V. CONCLUSION

Based on the foregoing, the court grants in part and denies in part the parties' motions. This matter is remanded to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion.

Dated: January 25, 2019

Amit P. Mehta
United States District Judge